LEAGUE OF NEBRASKA MUNICIPALI-
TIES, a non-profit Nebraska Cor-
poration, et al., Plaintiffs,

v.

Frank O. MARSH, as Secretary of State
of the State of Nebraska and as Mem-
ber of the State Board of Election Can-
vassers of the State of Nebraska, et al.,
Defendants.

Nebraska State American Federation of
Labor and Congress of Industrial Or-
ganizations, et al., Intervenors.

Civ. A. No. 551 L.

United States District Court
D. Nebraska.
July 20, 1962.

Lloyd E. Chapman and Ralph D. Nelson, Lincoln, Neb., and Herbert M. Fitle, Omaha, Neb., for plaintiffs.

Robert A. Nelson, Special Asst. Atty. Gen., and Richard H. Williams, Asst. Atty. Gen., Lincoln, Neb., for defendants.

August Ross, Omaha, Neb., for intervenors.

Before JOHNSEN, Circuit Judge, ROBINSON, Chief Judge, and VAN PELT, District Judge.

VAN PELT, District Judge.

This action was filed July 20, 1962. It was tried and submitted on August 27th and is now ready for decision. It can be properly called a re-apportionment case. It is based upon the teachings of Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). It seeks to have this court determine that the legislative enactment of 1935 implementing Article III, Section 5 of the Nebraska Constitution (See footnote [1]) creating legislative districts for the Nebraska Unicameral Legislature is void and invalid; that plaintiffs have been deprived of liberty and property without due process and have been denied equal protection of the laws in violation of the 14th amendment; that their rights guaranteed under Section 1 of Article VI of the Constitution of Nebraska have been impaired. It seeks to restrain defendant officials from furnishing forms and ballots and doing the acts necessary to hold elections for members of the legislature until it re-apportions and seeks to enjoin the county clerks and election commissioners from submitting to the electors at the November 6, 1962 election the proposed constitutional amendment embodied in L. B. 217 (See footnote [2]) enacted by the 1961

[1]. Article III, Sec. 5. "Legislative districts; apportionment. At the regular session of the Legislature held in the year nineteen hundred and thirty-five the Legislature shall by law determine the number of members to be elected and divide the state into Legislative Districts. In the creation of such Districts, any county that contains population sufficient to entitle it to two or more members of the Legislature shall be divided into separate and distinct Legislative Districts, as nearly equal in population as may be and composed of contiguous and compact territory. After the creation of such districts, beginning in nineteen hundred and thirty-six and every two years thereafter, one member of the Legislature shall be elected from each such District. The basis of apportionment shall be the population excluding

aliens, as shown by next preceding federal census. In like manner, when necessary to a correction of inequalities in the population of such districts, the state may be redistricted from time to time, but no oftener than once in ten years. (Amended, 1934)."

[2]. L.B. 217, omitting the form of ballot and other matters immaterial here, reads:
That at the general election in November, 1962, there shall be submitted to the electors of the State of Nebraska for approval the following amendment to Article III, section 5, of the Constitution of Nebraska, which is hereby proposed by the Legislature:
"Sec. 5. At the regular session of the Legislature held in the year nineteen hundred and thirty-five the Legislature shall by law determine the number of

Legislature, which is hereinafter discussed, and for other appropriate equitable relief.

Intervenors' claims are almost verbatim those of plaintiffs. In addition they ask that members of the legislature be elected at large at all future elections, including that of November 6th, until reapportionment is accomplished.

The separate complaints of plaintiffs and intervenors, the answers thereto and the replies filed by plaintiffs frame the issues.

Defendants filed motions, and before they were presented, the defendants, by order of court, were required to answer with the understanding that the motions could be presented prior to trial. The motions were so argued and, except for the ruling that the court had jurisdiction of this case, the points were reserved for decision until the case was decided on its merits.

We, therefore, first discuss and rule upon the separate grounds of the motion, filing number 9 herein.

It is contended that the League of Municipalities, hereafter called League, should be dismissed as a plaintiff because it is not a proper party to bring such an action. The League is a nonstock and non-profit Nebraska corporation with 280 members representing over one-half of the incorporated municipalities in Nebraska. Its objects as set forth in the complaint are admitted. It is unnecessary to set them forth here. They are in line with the general object of promoting the development and growth of all cities and villages in the state. It

is likewise contended that intervenor, Nebraska State American Federation of Labor and Congress of Industrial Organizations, an unincorporated labor association, hereafter called Federation, is not a proper party to maintain such an action as this.

Admittedly, neither the League, nor any of the municipalities which make up its membership, nor the Federation are voters. The League, though relying on its agency powers, is not the agent for any voter. It claims that it is interested in the apportionment of the legislature because of the problems of its membership and the general object above stated.

■ The Federation takes the position that it has a right to intervene even though it might not have been a proper party to bring the suit as a plaintiff. It relies upon general textbook interpretation of F.R.Civ.P. Rule 24, 28 U.S.C.A. and such statements as that in Securities and Exchange Commission v. U. S. Realty & Improvement Co., 310 U.S. 434, 60 S. Ct. 1044, 84 L.Ed. 1293 (1940), that "this provision plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation". It cites the case of Brotherhood of Locomotive Engineers v. Chicago, Milwaukee & St. Paul R. R., 34 F.Supp. 594, (E.D.Wis. 1940); 41 F.Supp. 571, (E.D.Wis.1941), in which a firemen's union was permitted to intervene in a matter involving the interpretation and application of a rule pertaining to mileage regulation. In the cited case the union had a claim or defense in common with the main action. Here the union has no such claim or de-

members to be elected and divide the state into legislative districts. In the creation of such districts, any county that contains population sufficient to entitle it to two or more members of the Legislature shall be divided into separate and distinct legislative districts, as nearly equal in population as may be and composed of contiguous and compact territory. After the creation of such districts, beginning in nineteen hundred and thirty-six and every two years thereafter, one member of the Legislature shall be elected from each such district. The ba-

sis of apportionment shall be the population excluding aliens, as shown by next preceding federal census. The Legislature may redistrict the state from time to time, not more often than once in ten years. In any such redistricting, county lines shall be followed whenever practicable, but other established lines may be followed at the discretion of the Legislature. In such redistricting, primary emphasis shall be placed on population and not less than twenty per cent nor more than thirty per cent weight shall be given to area."

fense. The Federation has no standing to make a claim such as that over which we take jurisdiction herein.

■■ Only a citizen who is a legal voter in a legislative district where his rights are impinged by the failure to reapportion can maintain such an action. Neither the League nor the Federation are entitled to vote. We hold that neither are proper plaintiffs. As to each of them, the motion to dismiss should be sustained.

Our conclusion is in harmony with the interpretation of the Solicitor General of the United States, Archibald Cox, in his article in the August 1962 issue of the American Bar Association Journal, where he says, "In Baker v. Carr the Supreme Court laid down three propositions: 1. *Individual voters* have standing to sue for redress against any constitutional interference with the right to vote * * *" (Emphasis ours).

■ Similarly, the mayors of the various cities and the officers and executive board of the Federation acting in their official capacities, as distinguished from their rights as individuals, have no standing to maintain this action, and as to them the motion to dismiss is sustained. This ruling does not prevent each of them remaining in the suit as individuals.

Defendants, by motion, question the court's jurisdiction of this action. We held at the time of the argument that we have jurisdiction. We reaffirm that holding. Defendants' argument goes more to the nature of the relief to be granted than to our jurisdiction to grant any relief. This is evidenced by the two paragraphs of the motion which urge failure to state a claim upon which relief can be granted. These two paragraphs are directed at striking but two paragraphs of the complaint and two paragraphs of the prayer. Examining the complaint in its entirety, we do not feel that as a matter of law we can or should say that the court lacks jurisdiction or that plaintiffs and intervenors have failed to state a claim upon which relief can be granted.

■■ From the evidence introduced, we hold that this court has jurisdiction of the subject matter and that one or more individual plaintiffs have standing to maintain this action. We further hold that the complaints of plaintiffs and of intervenors each state a justiciable claim.

■ Defendants urge that we deny all relief and dismiss this case because the Nebraska Constitution in Article III, Section 2 provides for the Initiative. It is claimed thereby that the voter has an adequate remedy by which to obtain redistricting. We outline the procedure for its use. After having drafted the proposed amendment to the constitution or statute, embodying the changes, the voter must then prepare petitions for circulation. Before they are circulated he must first file the proposal and certain information as to its sponsors with the Secretary of State and obtain his determination of the sufficiency of the petition (See Sec. 32–704 Neb.R.R.S.1943). He then procures the signatures of 10 percent of the electors of the state if he is proposing a constitutional amendment, or of 7 percent of the electors if he proposes enactment of a law. Nebraska has 93 counties. The signatures shall be distributed so as to include 5 percent of the electors of each of two-fifths of the counties of the state. This is 38. We mention the procedure in this detail because this is the remedy which the defendants claim affords the average voter an adequate remedy.

Since 1934 at least 13 measures have been submitted under the initiative or referendum provisions of the Nebraska Constitution. 6 have carried. 7 have failed. In addition some measures proposed and submitted to the Secretary of State failed to obtain the required signatures. The Nebraska State Bar Association with its over 2000 members failed recently to secure sufficient signatures to place on the ballot an amendment relating to the judiciary. The court of its own knowledge knows that in 1957 an at-

tempt was made to place on the ballot a proposal to elect rather than appoint the State Commissioner of Education. Petitions with 58,548 signatures were presented. 56,793 were required. 4,884 were struck by the Secretary of State following examination. This reduced the number of qualified signatures below the number required to put the proposal on the ballot.

To say that such a remedy is adequate for one ordinary voter, and we are here concerned with the rights of an individual voter, for concededly one ordinary voter could maintain this action, is being impractical. In addition, the expense of putting an initiated proposal on the ballot in Nebraska is prohibitive for the ordinary voter.

We hold that the Initiative as provided in the Constitution of Nebraska does not constitute "an adequate remedy" "to correct inequalities which exist in the apportionment of legislative districts" as claimed in defendants answer.

There is no substantial dispute in the evidence. There is dispute as to the conclusions to be drawn and the action to be taken by the court.

Nebraska is, and since adoption of the Unicameral system has been, divided into 43 legislative districts. The boundaries have not been changed since fixed by the 1935 legislature. The 1930 census was used in their creation. Between 1930 and 1960 the population of the state increased by less than 33,500 persons. The legislative district with the least population when created was district thirty-nine with 26,339 persons. The most populous was district one with 38,406 persons. (See Exhibit 16). The difference was 12,066 persons. Thus, the most populous district was approximately 45.7 per cent larger than the least populous one.

Based upon the 1960 census the least populous district now is number thirty-seven with 18,824 persons. The most populous is district ten with 100,826 persons. The numerical difference now stands at 82,004 persons. The most populous district now is 530 per cent, or over five times larger than the least populous one.

To further emphasize the population shifts, we note that the 5 least populous districts which are districts twenty-seven, twenty-nine, thirty-two, thirty-five and thirty-seven have less population than district ten. The 14 least populous districts, having 14 votes in the legislature, have a total population of 282,309. The 4 most populous with only 4 votes in the legislature have a total population of 281,377.

In Lancaster county, two districts each have approximately twice the population of the 3rd Lancaster county district. In Douglas county, the most populous district has a population greater than the total of the 3 least populous districts in that county.

These are illustrations of the substantial differences existing in the population of Nebraska legislative districts. They are demonstrative of the position of plaintiffs and intervenors that the equality guaranteed by the 14th amendment is lacking.

We next consider the present constitutional provision for re-apportionment in Nebraska and its history. In adopting the Unicameral system, Section 5 of Article III of the 1919 constitution was amended. Article III, Section 5 of the 1919 constitution superseded Article III, Section 2 of the 1875 constitution. (See footnote [3]) The history of the 1919 proposal and debates therefore deserves consideration.

3. Article III, Section 2. (Census; legislative apportionment.) "The legislature shall provide by law for an enumeration of the inhabitants of the state in the year eighteen hundred and eighty-five, and every ten years thereafter; and at its first regular session after each enumeration, and also after each enumeration made by the authority of the United States, but at no other time, the legislature shall apportion the senators and representatives according to the number of inhabitants, excluding Indians not taxed, and soldiers and officers of the United States army and navy."

We first call attention to a matter which may have impact on the final action to be taken in this, or in any similar case, but which is not directly involved in the decision here reached. The 1934 amendment to Section 5, Article III, contains as its final sentence the following:

"In like manner, when necessary to a correction of inequalities in the population of such districts, the state may be redistricted from time to time, but no oftener than once in ten years."

This language is identical with the language adopted in 1919. The 1875 constitutional provision which it superseded provided that the legislature "shall apportion the senators and representatives". It is to be observed that "shall" was replaced by "may". The debates show that this was an intentional change and that it resulted, at least in part, because the mandatory re-apportionment provided for in the 1875 constitution had not been carried out in practice.

We next consider the 1919 constitutional proposals and debates in considering whether the amendment proposed by the 1961 Legislature for submission to the electors in November 1962 marks a change from the existing constitution with reference to the division of counties.

In the 1919 convention, Proposal 159 which provided "that the legislature shall have power to divide counties along precinct lines" was indefinitely postponed. The debates further show that in discussion of Proposal 314, which was the basis of the amendment adopted and ratified by the people, there was frequent reference to whether the small counties should be divided. This came up most frequently when the matter of "float" representation was under discussion. It was decided to permit division of counties entitled to two or more members, and it is clear from reading the debates that the framers did not intend to permit division of counties entitled to less than two members. This conclusion is further borne out by the fact that no counties, other than those entitled to two or more

members, have been divided in 43 years and by the fact that the amendment embodied in L.B. 217 of the 1961 legislature which is to be submitted to the people at the November election, unless we forbid, specifically provides "In any such redistricting, county lines shall be followed whenever practicable, but other established lines may be followed at the discretion of the legislature".

It thus seems clear to this court that the proposed constitutional amendment, if adopted, can be interpreted to change the existing constitution in two respects:

1) the one just mentioned, whereby county lines will not have to be followed in reapportionment, although they are to be followed "whenever practicable", and

2) the one which has had so much emphasis in this lawsuit relating to giving weight to area in redistricting.

It is also possible that the sentence of the amendment permitting division of the counties could be held valid, and that the sentence providing for area weighting could be held invalid or vice versa. It is not for us, at least at this time, to say that the two changes have to stand or fall together.

We are asked to prevent a vote on the entire amendment. If we did so, and the sentence embodying either change is constitutional, we would have prohibited such a legal enactment. We further note that no one has contended to date in this lawsuit that the sentence of the proposed amendment permitting the following of other than county lines in redistricting is invalid.

To summarize, we have not only the possibility of the defeat of the amendment, but also the possibility that a portion could be held valid even though another portion is held invalid. (It must be understood that we are not expressing any opinion on the validity or invalidity of any portion of the proposed amendment). We have also an amendment which, if adopted, will require action by the legislature. We can at this time only

speculate on what form any such action will take.

Intervenors offered in evidence an exhibit showing representation under a plan which, it is said, gives 30 per cent weight to area; this is the maximum under the proposal. In substance, although some individual districts are changed, intervenors claim that a plan giving 30 per cent weight to area will not materially change the representation which now prevails. From this it is argued that the purpose of the amendment is to maintain the numerical status quo. No showing is made as to the effect of a 20 per cent area weighting. Circumstances can exist, assuming the principle of area weighting is valid, where 30 per cent area weight—might perhaps be discriminatory and 20 per cent area weighting might perhaps not be held discriminatory.

We conclude that we should not at this time enter an order preventing the electorate of Nebraska from expressing themselves on this proposed amendment.

Plaintiffs suggest that members of the legislature be elected at large beginning in 1964. Intervenors ask that elections at large be held in November 1962. Counsel amicus curiae suggested allowing election from the districts as they now exist, but allowing votes in the Unicameral based upon population. We have permitted intervenors to amend and ask for this relief. Thus one legislator might have one-half vote and some other legislator might have three votes. This suggestion is also found in the article of the Solicitor General above mentioned. Intervenors also submit a proposal for redistricting by the court. In this proposal the district with the largest population would have 36,730 inhabitants and the one with the least would have 28,032. It is thus evident that intervenors do not believe that the districts must be substantially equal in population. Counsel amicus curiae quote Mr. Justice Douglas, who, in concurring in Baker v. Carr, supra, stated, "Universal equality is not the test; there is room for weighting."

The proposal for elections at large in November 1962, comes after the primaries have been held and many nominations made from the various districts. A voice in the primary can be as important as a voice in the general election. The thirty-eighth district nominated two candidates at the primary. This district, probably comes closer to the average obtained by dividing the total population of the state by 43 than could reasonably be expected even if county boundaries were not observed. Residents of this district would be subjected to an at large election and conceivably have neither of their candidates elected when their voting rights have neither been impinged nor increased. The expense of a ballot of such proportions and its tallying would be heavy, and would have to be incurred in each district whether reapportionment in such district is necessary or not. Without saying that at large elections for legislators may never become necessary in Nebraska, we feel that such an order should not be entered with respect to the November 1962 election.

We are asked by plaintiffs to order at large elections in 1964. Such an order does not need to be entered now. By retaining jurisdiction of this case, we can enter such an order later, if it becomes necessary.

It is proposed that we order a weighted vote in the legislature to be elected in November. This is an interesting alternative, and political economists would be furnished a laboratory from which many and varied conclusions could be drawn. It gives rise to unlimited speculation as to committee appointments, the allotment of time in debate and the effect of the voices to be heard. Courts are hesitant to experiment with human rights when the people themselves have shown no inclination to so experiment. We conclude not to presently embrace a proposal which may contain "evils we know not of".

With elections at hand and with little time for campaigning on a state-wide basis, we conclude that justice will be best served by not taking action with reference to the ballot at this time. In so

ruling, we wish to make it clear that we are not saying, in the event that the next legislature does not take action or in the event the action taken is invidious or arbitrary, that we will not attempt to devise a remedy. If it becomes necessary for a further ruling, we express the hope that the matter can be presented well before the 1964 primaries.

■ There is a natural reluctance on the part of any court to interfere with elections. It is increased by the possibility that an issue may not carry.

■ We find in the federal system, an even greater reluctance to interfere with state elections, because of our desire and efforts to maintain a peaceful relationship within the federal system.

This is in harmony with the position of other district courts in this circuit. See Magraw v. Donovan, 163 F.Supp. 184, (D.Minn.1958). Lein et al. v. Sathre et al., 205 F.Supp. 536, in the District of North Dakota.

The problems which we have been here considering have been recently considered by two courts in circuits other than ours. Their decisions are consistent with the conclusions we have reached.

The United States District Court for the Western District of Wisconsin in an opinion dated August 14, 1962, stated: "The framing of appropriate relief in this kind of a case, is a delicate job which can be done properly only after careful, time-consuming study. Furthermore, a mandate at this time that all candidates for the legislature and for congress should run at large, would be likely to create great confusion and many additional problems might be created.

"This court is sitting as a court of equity. It must balance the equities. As a practical matter, it is impossible at this late date to enter orders which would change the election dates of the primary and general elections, and also change all the statutory preliminary requirements. The balance of the equities is against the plaintiffs, due largely to the time element involved." State of Wisconsin et al. v. Limmerman, 209 F.Supp. 183, 188.

The United States LAW WEEK for August 28, 1962 quotes from an opinion of August 10, 1962 of a three judge court in the United States District Court for the District of Colorado in part as follows: "It would be presumptuous for this court to devise a plan on its own initiative. Moreover, in view of the magnitude of the task, the time is wholly inadequate. Any positive order entered at this time would probably interfere with the September primaries and would have a disruptive effect." Lisco v. McNichols, U.S.C.D.Colo., 208 F.Supp. 471. These cases are not controlling upon us, but we agree with this approach to the problems confronting all of us.

The Nebraska Supreme Court has heretofore taken original jurisdiction of matters affecting or involving great public interest, such as betting at Ak-Sar-Ben (see State ex rel. Sorensen v. Ak-Sar-Ben, 118 Neb. 851, 226 N.W. 705 (1929), and judicial retirement. (See Wilson v. Marsh, 162 Neb. 237, 75 N.W. 2d 723 (1956). Perhaps that court can express itself on these issues before it becomes necessary, if it ever does, for further presentation to us. We will not rush into a field where there is reason to think that the state government, through its appropriate agencies, can and will afford relief. We hasten to add, however, that we will not hesitate to act if it appears later that we should do so.

We are presently denying all relief requested, but are reserving and retaining jurisdiction of this case.

An order will be entered accordingly.