Thomas Aries SCOTT, Plaintiff-Appellant,

v.

Edward A. HILL et al., Defendants-Appellees.

No. 71-1002.

United States Court of Appeals, Sixth Circuit.

Oct. 7, 1971.

Stuart Lyon, Louisville, Ky., for appellant; David Kaplan, Don Major, Louisville, Ky., on brief.

George F. Rabe, Frankfort, Ky., for appellees; John B. Breckinridge, Atty. Gen., Frankfort, Ky., on brief.

Before PHILLIPS, Chief Judge, CELEBREZZE and McCREE, Circuit Judges.

CELEBREZZE, Circuit Judge.

This case is before us on an appeal from the decision of the United States District Court for the Eastern District of Kentucky, dismissing Appellant's action for failure to state a claim upon which relief could be granted.

Appellant, Thomas Aries Scott, was sentenced to death for the murder of two Louisville, Kentucky, policemen after a trial in the Jefferson Circuit Court. His appeal from that conviction is presently pending before the Kentucky Court of Appeals, the State's highest court.

After filing his appeal with the Kentucky Court of Appeals, Appellant brought an action before the United States District Court for the Eastern District of Kentucky, asking that a three-judge District Court be convened under 28 U.S.C. § 2281 to enjoin the Kentucky Court of Appeals, as it is presently composed, from hearing his appeal. Appellant asserted that he will be denied equal protection and due process of the law under the Fourteenth Amendment of the United States Constitution if his appeal is heard by the Judges of the Kentucky Court of Appeals, who were elected from electoral districts prescribed by KRS 21.020 which are not apportioned according to the current population distribution within the State.

The District Court dismissed Appellant's action, finding 1) that Appellant had no standing to assert his claim since, as a criminal, he had forfeited his right to vote and 2) that Appellant failed to assert a substantial constitutional issue since the "one-man, one-vote" apportionment requirement set forth in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), does not apply to the election of state court judges.

We affirm the decision of the District Court, but on different grounds as set forth herein.

I.

■ With respect to the District Court's dismissal of Appellant's claim because Appellant had no standing to sue, we believe, without deciding, that Appellant's standing to sue presented a substantial constitutional question which, in a proper case, would have warranted the convening of a three-judge District Court under 28 U.S.C. § 2281.

The District Court apparently accepted Appellees' argument that, because convicted felons forfeit their right to vote in Kentucky, Ky. Const. § 145(1), (2), Appellant had no standing to challenge the apportionment of the electoral districts from which the Kentucky Court of Appeals is elected. Appellant does not cite, nor are we able to find, any cases which have recognized a nonvoter's standing to challenge the apportionment

of electoral districts. Nearly all of the early legislative apportionment cases decided by the United States Supreme Court involved *voters* challenging state electoral districts. *See, e. g.*, Smiley v. Holm, 285 U.S. 355, 361, 52 S.Ct. 397, 76 L.Ed. 795 (1932) ("citizen, elector, and taxpayer"); Koenig v. Flynn, 285 U.S. 375, 379, 52 S.Ct. 403, 76 L.Ed. 805 (1932) ("citizens and voters"); Wood v. Broom, 287 U.S. 1, 4, 53 S.Ct. 1, 77 L.Ed. 131 (1932) (a citizen, elector, and qualified candidate for the House of Representatives); Colegrove v. Green, 328 U.S. 549, 550, 66 S.Ct. 1198, 90 L.Ed. 1432 (1946) (Frankfurter, J.) (qualified voters); South v. Peters, 339 U.S. 276, 277, 70 S.Ct. 641, 94 L.Ed. 834 (1950) (residents and voters of the most populous country in the state). In the landmark case of Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)—the only legislative apportionment case in which the Supreme Court thoroughly considered the question of standing to sue—the Court's concern was limited to the standing of voters to bring reapportionment actions. 369 U.S. at 204–208, 82 S.Ct. 691. And subsequent cases have construed Baker v. Carr as establishing the standing of voters to seek the protection of the United States Constitution against the "dilution or debasement" of their right to vote. Hadley v. Junior College District, 397 U.S. 50, 54, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970). *See also* Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963); Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Burns v. Richardson, 384 U.S. 73, 86 S.Ct. 1286, 16 L.Ed.2d 376 (1966); Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501 (1967); Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968). In his opinion in Oregon v. Mitchell, 400 U.S. 112, 136–137, 91 S.Ct. 260, 271, 27 L.Ed.2d 272 (1970), Mr. Justice Douglas spoke of an individual's voting right as being the concern of the Supreme Court in Baker v. Carr and subsequent cases: "That case was followed by numerous others, *e. g.*: that one person could not be given twice or 10 times the voting power of another person in a statewide election merely because he lived in a rural area or in the smallest rural county * * *." Indeed, at least two three-judge United States District Courts have held that legislative reapportionment actions can be brought only by qualified voters suffering under a state's malapportioned electoral districts. In State of Wisconsin v. Zimmerman, 205 F.Supp. 673 (W.D.Wis. 1962), a three-judge District Court, holding that a state does not have standing to bring a reapportionment action on behalf of its people, stated that "the fundamental questions at stake in this litigation cannot be properly decided in this Court unless two or more individual Wisconsin electors are named as parties plaintiff." 205 F.Supp. at 676, citing Baker v. Carr, *supra*. And the three-judge District Court in League of Nebraska Municipalities v. Marsh, 209 F. Supp. 189 (D.Neb.1962), dismissed a reapportionment action brought by an association of municipalities and the state chapter of the AFL–CIO, holding that "[o]nly a citizen who is a legal voter in a legislative district where his rights are impinged by the failure to reapportion can maintain such an action." 209 F. Supp. at 192. More recently, the United States Court of Appeals for the Seventh Circuit has similarly interpreted Baker v. Carr, *supra*, and the subsequent Supreme Court cases cited above as protecting the voting rights of individuals. Recognizing the standing of voters to challenge the political patronage system of Chicago and Cook County in Shakman v. Democratic Organization of Cook County, 435 F.2d 267 (7th Cir. 1970), the Court found that "[t]he equal protection clause secures from invidious official discrimination the voter's interest in a voice in government of equal effectiveness with other voters." 435 F.2d at 270.

Notwithstanding this support for Appellees' argument that only a qualified

voter has standing to bring a reapportionment action, the cases cited above do not conclusively dispose of Appellant's claim that a nonvoting citizen has standing to challenge the dilution of his representation through malapportioned electoral districts. Neither the Supreme Court nor the lower Courts have specifically denied standing to a nonvoting citizen bringing an action for reapportionment. In Mathews v. Handley, 361 U.S. 127, 80 S.Ct. 256, 4 L.Ed.2d 180 (memorandum), affirming 179 F.Supp. 470 (N.D.Ind.1959), the Supreme Court affirmed, without opinion, the three-judge District Court's dismissal of an action by "citizens" and "taxpayers" seeking, among other things, the reapportionment of the Indiana Legislature. The District Court's dismissal was based on grounds other than any finding that the plaintiffs lacked standing to sue, despite the fact that that Court's opinion does not reveal that the plaintiffs were qualified voters. Moreover, because the appellants in Baker v. Carr were in fact qualified voters, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), the Supreme Court's recognition of standing in that case cannot be interpreted as precluding a nonvoting citizen's standing to bring a similar reapportionment action. Although not a qualified voter, Appellant here might very well be found to meet the oft-quoted test set forth by the Supreme Court in Baker v. Carr:

> "Have the appellants alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions? This is the gist of the question of standing." 369 U.S. at 204, 82 S.Ct. at 703.

With respect to this test for standing as applied to Appellant, it should be noted, as Appellant has in his brief, that Section 116 of the Kentucky Constitution requires that Judges of the Kentucky Court of Appeals shall be elected from districts apportioned on the basis of population rather than on the basis of the number of qualified voters. It might be found that, by adopting Section 116, the framers of the Kentucky Constitution intended the Court of Appeals to represent the citizens of the state and not merely the state's qualified electors, vesting in Appellant an interest which would support his standing to sue under the test set forth above. Moreover, it is clear that Appellant's immediate interest in the composition of the Kentucky Court of Appeals—the tribunal which will review his conviction and death sentence—affords Appellant a very specific "personal stake in the outcome of the controversy" which might warrant a recognition of his standing in this case.

We therefore believe that the question of Appellant's standing to challenge the apportionment of the electoral districts from which the Judges of the Kentucky Court of Appeals are elected presents a substantial constitutional issue which, in a proper case, should have been decided by a three-judge District Court under 28 U.S.C. § 2281. For the reasons set forth in part III below, however, we need not decide whether the District Court erred in refusing to convene a three-judge court on the basis of its finding that Appellant lacked standing to sue.

## II.

■ The Second ground upon which the District Court dismissed Appellant's action was that Court's finding that the "one-man, one-vote" rule is not applicable to the election of state court judges and therefore Appellant is not denied equal protection or due process of the law under the electoral districts prescribed by KRS 21.020. We believe, without deciding, that the question of whether the "one-man, one-vote" rule applies to the election of the Kentucky Court of Appeals judges presented a substantial constitutional question which, in a proper case, would have warranted the convening of a three-judge District Court under 28 U.S.C. § 2281.

In dismissing Plaintiff-Appellant's action on this second ground, the District

Court cited several cases—also relied upon by Appellees in the present appeal —in support of its finding that the "one-man, one-vote" rule does not apply to the election of state court judges: Buchanan v. Rhodes, 249 F.Supp. 860 (N.Y.Ohio), appeal dismissed, 385 U.S. 3, 87 S.Ct. 33, 17 L.Ed.2d 3 (1966); Stokes v. Fortson, 234 F.Supp. 575 (N. D.Ga.1964); New York State Association of Trial Lawyers v. Rockefeller, 267 F.Supp. 148 (S.D.N.Y.1967); Kail v. Rockefeller, 275 F.Supp. 937 (E.D.N.Y. 1967); Hadley v. Junior College District, 397 U.S. 50, 90 S.Ct. 791, 25 L. Ed.2d 45 (1970). These cases do not conclusively dispose of the question presently before us.

Stokes v. Fortson, *supra*, involved an action before a three-judge District Court by residents and electors of a particular judicial district in Georgia asserting that they were denied equal protection of the law under Georgia's judicial electoral system. Under that system, judges for each district were nominated by voters residing in the district, whereas the judges were then elected on a statewide basis. The three-judge court dismissed the complaint, finding no "discrimination among voters or unequal weighting of votes of the sort condemned by the one man—one vote principle" and that "the one man—one vote doctrine * * * does not extend to the judiciary." 234 F.Supp. at 577. The *Stokes* case is distinguishable on its facts, and Appellant in the case before us does appear to assert a denial of representation as condemned by the "one-man, one-vote" rule.

In Buchanan v. Rhodes, *supra*, plaintiffs in personal injury cases which were pending in the Cuyahoga County, Ohio, Common Pleas Court brought an action for a three-judge District Court, asserting that the failure of the state to distribute common pleas judges according to the population of the various counties denied plaintiffs equal protection of the law. Refusing to convene a three-judge court, the District Court noted that "we must recognize one glaring distinction

between the functions of legislators and the functions of jurists. Judges do not represent people, they serve people." 249 F.Supp. at 865. Although the District Court in the present case apparently gave weight to the language quoted above, it is clear that both that Court and Appellees here overlooked the subsequent history of the *Buchanan* decision. After the Supreme Court dismissed, for lack of jurisdiction, the direct appeal from the District Court's refusal to convene a three-judge court in *Buchanan*, 385 U.S. 3, 87 S.Ct. 33, 17 L.Ed.2d 3 (1966), the plaintiffs in that case appealed to this Court. We reversed and remanded to the District Court on procedural grounds, directing that Court to convene a three-judge court to hear the Plaintiff-Appellant's claim. 400 F.2d 882, cert. denied, 393 U.S. 839, 89 S.Ct. 118, 21 L.Ed.2d 110 (1968). In view of this subsequent history of the *Buchanan* case, it clearly does not support the District Court's dismissal of Appellant's claim in the case before us, but rather suggests that a three-judge court should have been convened.

In New York State Association of Trial Lawyers and Kail v. Rockefeller, *supra*, the plaintiffs similarly brought actions for three-judge courts to require the State of the New York to "reapportion" its judges so as to eliminate delays in the state courts. Refusing to convene a three-judge court, the District Court in the first case observed that "[t]he state judiciary, unlike the legislature, is not the organ responsible for achieving representative government." 267 F.Supp. at 153. And the three-judge District Court in *Kail* dismissed the plaintiff's action, refusing to interfere with the state's judicial affairs and noting that "[t]he fundamental fallacy of plaintiff's position is to be found in the 'one-man—one vote' slogan which is currently spreading throughout the country without regard to its original and well-intended purpose." 275 F.Supp. at 940. Although the quoted language from these two cases appears to be dispositive of the question before us, these cases are

in conflict with our own decision in Buchanan v. Rhodes, 400 F.2d 882, wherein we directed the District Court to convene a three-judge court to hear an identical claim.

The Supreme Court's opinion in Hadley v. Junior College District, *supra*, contains language which appears to support the arguments of both Appellant and Appellees with respect to the applicability of the "one-man, one-vote" rule to the election of state court judges. In that case residents of a school district containing 60% of the total population in a junior college district asserted that their voting rights were diluted by a state statute which allowed them to elect only 50% of the trustees for the junior college district. Reversing the Supreme Court of Missouri's dismissal of the suit, the United States Supreme Court held that the equal protection clause and the "one-man, one-vote" principle apply to the election of such junior college district trustees who exercise general governmental powers. Discussing the scope of the "one-man, one-vote" principle, the Supreme Court's opinion contains the following language which appears to be particularly favorable to Appellant's claim here:

"When a court is asked to decide whether a State is required by the Constitution to give each qualified voter the same power in an election open to all, there is no discernible, valid reason why constitutional distinctions should be drawn on the basis of the purpose of the election." 397 U.S. at 54–55, 90 S.Ct. at 794.

"We therefore hold today that as a general rule, whenever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as

far as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials." 397 U.S. at 56, 90 S.Ct. at 795.

Because the Kentucky Constitution itself requires that the districts from which Court of Appeals Judges are elected be apportioned according to population, Ky. Const. § 116, it might be found that the "one-man, one-vote" rule, as construed above, is especially applicable to the election of those Judges. Arguing that the election of state court judges is an exception to the *Hadley* rule, Appellees, however, rely on the following language in that case:

"It is of course possible that there might be some case in which a State elects certain functionaries whose duties are so far removed from normal governmental activities and so disproportionately affect different groups that a popular election in compliance with [the one-man, one-vote rule] might not be required * * *" 397 U.S. at 56, 90 S.Ct. at 795.

In the case before us we need not decide whether the District Court erred in dismissing Plaintiff-Appellant's action on the ground that the "one-man, one-vote" principle does not apply to the election of state court judges. In view of our decision in Buchanan v. Rhodes, 400 F.2d 882 (6th Cir. 1966), and the equivocal language in Hadley v. Junior College District, *supra*, however, we do believe that, in a proper case, this issue would present a substantial constitutional question warranting the convening of a three-judge District Court.

### III.

Appellant's appeal from his conviction and death sentence is presently pending before the Kentucky Court of Appeals, the Court whose composition Appellant challenges in the present action. In his complaint before the District Court, Appellant sought the following declaratory and injunctive relief:

"1. That this Court cause this matter to be brought before a three judge

panel for a speedy hearing at the earliest possible date in order to determine the Constitutional issues raised herein.

2. That the Court declare that the Constitution and Statutes of the Commonwealth of Kentucky be declared unconstitutional insofar as they provide for a manner of election of and redistricting of the Court of Appeals of the Commonwealth of Kentucky in a manner offensive to the 14th Amendment of the Constitution of the United States. K.R.S. 21.020.

3. That a temporary injunction be issued prohibiting the Court of Appeals of Kentucky to take any action on this case, and secondly that this inaction in no way be used to prejudice the petitioner in regards to any time requirements which would preclude petitioner from appealing his case.

4. That the Court require the Governor of Kentucky, Louis (sic) B. Nunn to call a special session of the State Legislature to reapportion the Court of Appeals of Kentucky.

5. That the Court be reapportioned in a manner similar to the congressional reapportionment.

6. That this case be held in abeyance until the Court is properly reapportioned.

7. That upon reapportioning the Court of Appeals into seven proper judicial districts a special election be called for the purpose of electing judges in compliance with the new standards of apportionment."

Appellant's present action is directly controlled by the Supreme Court's recent series of cases, discussed below, which held that in the absence of impending irreparable injury, federal courts must abstain from granting declaratory and injunctive relief to persons who are parties to pending state proceedings at which they can assert their constitutional claims.

The principal case in the Supreme Court's series of abstention cases decided on February 23, 1971, was Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669. In *Younger*, a three-judge District Court had restrained a District Attorney from further prosecution of a pending action against Harris under California's Criminal Syndicalism Act, which the Court found to be void for vagueness and overbreadth in violation of the First and Fourteenth Amendments. Reviewing the longstanding policy favoring the refusal of federal courts to intervene in pending state court proceedings, the Supreme Court reversed the three-judge court, holding that federal courts must not intervene in pending state criminal proceedings by way of injunction except in exceptional cases where irreparable injury will result and "the threat to the plaintiff's federally protected rights [is] one that cannot be eliminated by his defense against a single criminal prosecution." 401 U.S. at 46, 91 S.Ct. at 751. As examples of such exceptional circumstances, the Court suggested that a federal court might enjoin a pending state criminal prosecution which is brought in bad faith to harass an individual, 401 U.S. at 49, 91 S.Ct. 746, or a prosecution under a state statute which is patently and flagrantly void on its face. 401 U.S. at 53, 91 S.Ct. 746.

The proscription of federal injunctive relief set forth in *Younger* was extended to federal declaratory judgments in Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). There the Supreme Court reversed a three-judge District Court's grant of declaratory relief in the absence of a showing that the plaintiffs would suffer irreparable injury under the pending state prosecution. In Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701; Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781; and Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792, all decided the same day as *Younger* and *Samuels*, the Supreme Court reasserted its holdings in the latter two cases.

In the case before us Appellant seeks both declaratory and injunctive relief against his pending appeal before the

Kentucky Court of Appeals—remedies which were precisely at issue in *Samuels* and *Younger*, respectively. Appellant does not assert that the pending state proceedings were brought in bad faith to harass him, nor does he contend that the Kentucky statute prescribing electoral districts from which Judges of the Court of Appeals are elected, KRS 21.020, is patently and flagrantly void on its face. *See* Younger v. Harris, 401 U.S. at 47–49, 53, 91 S.Ct. 746. Although Appellant asserts in his complaint that "he will suffer irreparable damage"—namely the affirmance of his conviction by a malapportioned state court—the threat to his federally protected rights is not "one that cannot be eliminated by his defense against a single criminal prosecution." Younger v. Harris, 401 U.S. at 46, 91 S.Ct. at 751. Appellant has not brought a class action for reapportionment, asserting that he represents all persons similarly situated who lack equal representation in the Kentucky Court of Appeals. Instead, Appellant represents only his own specific interest in equal protection and due process of the law under the Fourteenth Amendment, which assertedly will be denied him if the present Kentucky Court of Appeals reviews his conviction. He will have a full opportunity to assert his constitutional claim before the state court. Moreover, should the Kentucky Court of Appeals uphold the constitutionality of the statute prescribing the districts from which its Judges are elected, Appellant will be able to appeal such a decision to the United States Supreme Court. 28 U.S.C. § 1257(2).

Finding that Appellant will suffer no irreparable harm as set forth in Younger v. Harris, *supra*, we hold that the Supreme Court's rulings in that case and Samuels v. Mackell, *supra*, require us to abstain from intervening in Appellant's pending state court appeal.[1] The District Court's dismissal of Appellant's action for a three-judge District Court to hear his request for both declaratory and injunctive relief, is therefore affirmed.

McCREE, Circuit Judge (concurring in part and dissenting in part).

If the complaint had sought only to stay the processing of Scott's appeal in the criminal prosecution, I would vote to affirm its dismissal. However, since it also asked the court to order a special election of the Court of Appeals from constitutionally apportioned districts, I would reverse and remand for the convening of a three-judge court to consider this prayer.

I agree that in requesting that "a temporary injunction be issued prohibiting the Court of Appeals of Kentucky to take any action on this case," appellant seeks to enjoin a stage of a criminal prosecution—an appeal. *See* Younger v. Harris, 401 U.S. 37, 57 n., 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (Brennan, J., concurring). As the majority observes, the central holding in *Younger* is that a federal court should not enjoin state criminal proceedings that are conducted in good faith and afford a defendant the opportunity to assert the rights sought to be vindicated by such an injunction. There is no allegation here that the prosecution was brought in bad faith or was intended to deny appellant or any others similarly situated any constitutional right. At most, appellant argues

[1]. It should be noted that the federal court abstention prescribed in *Younger* and *Samuels* is especially appropriate in this case for yet another reason. Appellant will be able to raise before the Kentucky Court of Appeals not only his present claim under the United States Constitution, but also a claim that the electoral districts of that Court, as prescribed in KRS 21.020, are unconstitutional under section 116 of the Kentucky Constitution. In section 116, the framers chose to have the Judges of the Kentucky Court of Appeals elected from equally apportioned districts, whereas the "one-man, one-vote" doctrine under the equal protection clause of the United States Constitution is not so clearly applicable to the election of state court judges, as noted in part II of our opinion. Appellant therefore has a more precise and established claim to assert under the state constitution, which especially warrants our abstention.

that there is a good faith difference between him and the prosecution whether there were "procedural due process" errors in his state criminal trial.

Accordingly, there is nothing to indicate that appellant's remedies, assuming he has a right, will in any way be inadequate if the state court proceedings are allowed to continue without further hindrance.[1] "[T]he threat to the plaintiff's federally protected rights" is not "one that cannot be eliminated by his defense against a single criminal prosecution." *Younger v. Harris,* 401 U.S. at 46, 91 S.Ct. at 751. Under *Younger v. Harris,* then, no injunction to delay these proceedings pending a redistricting should be issued. It is axiomatic in the law of three-judge District Courts that a substantial constitutional question is not presented when an issue, whatever its continuing vitality as a subject for academic debate, has been squarely decided by the Supreme Court. *California Water Service Co. v. City of Redding,* 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938). Since the *Younger* decision clearly prohibits the relief prayed for, no substan-

tial constitutional question is raised, and the District Court did not err in this respect in refusing to convene a three-judge District Court.

However, I am unable to agree with the majority that the entire action is "directly controlled" by the *Younger* line of authority. I conclude that remand is necessary because, in addition to seeking a stay, appellant also prayed:

2. That the Court declare that the Constitution and Statutes of the Commonwealth of Kentucky be declared unconstitutional insofar as they provide for a manner of election of and redistricting of the Court of Appeals of the Commonwealth of Kentucky in a manner offensive to the 14th Amendment of the Constitution of the United States. K.R.S. 21.020.

\* \* \* \* \* \*

4. That the Court require the Governor of Kentucky, Louis (sic) B. Nunn to call a special session of the State Legislature to reapportion the Court of Appeals of Kentucky.

---

1. Appellant might avoid the *Younger* bar by showing that the relief he seeks—appeal before a Court of Appeals elected from equal-population districts—could not be obtained in the ordinary course of the state court proceedings currently in progress. It does not appear that appellant has raised the one-man, one-vote issue before the Kentucky Court of Appeals; nor is it alleged that that court, which is bound as we are to follow the federal constitution, is not a proper forum for resolution of that issue. In any case, appellant could appeal any adverse decision on that issue in the Kentucky court to the United States Supreme Court. At oral argument, appellant suggested the possibility that such review would be inadequate to vindicate this right because, if courts are treated as legislatures, then their decisions, once made, will be regarded as *de facto* legal even if their composition is held unconstitutional. See *Maryland Committee v. Tawes,* 377 U.S. 656, 675–676, 84 S.Ct. 1429, 12 L.Ed.2d 595 (1964); *Fortson v. Morris,* 385 U.S. 231, 235, 87 S.Ct. 446, 17 L.Ed.2d 330 (1966); *Dawson v. Bomar,* 322 F.2d 445 (6th Cir. 1963), which recognize as valid

under the *de facto* doctrine acts of admittedly malapportioned legislatures. Thus appellant argues that he must have a decision and relief before, and not after, the Kentucky Court of Appeals rules since a decision made thereafter may result in his having won the battle—obtaining a redistricting of the Court of Appeals districts—and lost the war—having his death sentence affirmed as the lawful act of a *de facto* legal court. However, it would seem to be within the power of the Supreme Court to order a new appeal if it should determine that appellant's claim is valid and he is entitled to relief. The Supreme Court has upheld the use of broad equitable powers, in what appellant says is the analogous case of malapportioned legislatures, to prohibit public bodies from acting on certain important questions. *E. g.,* Buckley v. Hoff, 234 F.Supp. 191, 200–201 (D.Vt. 1964), modified per stipulation sub nom. *Parsons v. Buckley,* 379 U.S. 359, 85 S.Ct. 503, 13 L.Ed.2d 352 (1965). See also Beiser, *The Status of a Malapportioned Legislature,* 72 Dick.L.Rev. 553, 572 & nn. 117–20 (1968).

5. That the Court be reapportioned in a manner similar to the congressional reapportionment.

\* \* \* \* \* \*

7. That upon reapportioning the Court of Appeals into seven proper judicial districts a special election be called for the purpose of electing judges in compliance with the new standards of apportionment.

If the complaint had contained only these prayers, I believe we would unanimously hold that a three-judge court should have been convened. Buchanan v. Rhodes, 400 F.2d 882 (6th Cir. 1968) (per curiam). No reason appears, nor does the majority opinion suggest one, to require a different result solely because there is also a prayer to stay a stage of a state criminal proceeding.

The majority opinion emphasizes that appellant "represents only his own specific interest in equal protection and due process of the law under the Fourteenth Amendment, which assertedly will be denied him if the present Kentucky Court of Appeals reviews his conviction." Apparently, the majority would require a federal reapportionment suit to be brought as a class action. Nothing in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), or its progeny imposes such a requirement. Indeed, case law subsequent to that decision suggests the contrary.

In *Baker*, which was brought as a class action, the Court did not hold that *only a class could bring the suit*. The Court did not even discuss the issue, although it did discuss the nature of the rights which the plaintiffs asserted:

The injury which appellants assert is that this classification disfavors the voters in the counties in which they reside, placing them in a position of constitutionally unjustifiable inequality *vis-à-vis* voters in irrationally favored counties. A citizen's right to a vote free of arbitrary impairment by state action has been judicially rec-

ognized as a right secured by the Constitution \* \* \*. It would not be necessary to decide whether appellants' allegations of impairment of their votes by the 1901 apportionment will, ultimately, entitle them to any relief, in order to hold that they have standing to seek it. If such impairment does produce a legally cognizable injury, they are among those who have sustained it. \* \* \* "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." Marbury v. Madison, 1 Cranch 137, 163, 2 L.Ed. 60.

369 U.S. at 207–208, 82 S.Ct. at 705. The focus of the Court was obviously on the personal and individual nature of the *right asserted*. It is well-established that classifications created by states may be challenged by a single member of the affected class in his own behalf. *See*, *e. g.*, Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965). In Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), an individual plaintiff, as a taxpayer and voter, successfully challenged the method of selecting county commissioners in his county. The Court in that case emphasized the plaintiff's individual right of having his vote count equally with those of other county residents. 390 U.S. at 476, 88 S.Ct. 1114. Accord, Honsey v. Donovan, 236 F.Supp. 8 (D.Minn. 1964); Stokes v. Fortson, 234 F.Supp. 575 (N.D.Ga.1964); Calkins v. Hare, 228 F.Supp. 824 (E.D.Mich.1964); Moore v. Moore, 229 F.Supp. 435 (S.D.Ala.1964) (per curiam).

Since, as the majority concludes, appellant has raised at least a colorable claim of standing as a citizen of Kentucky to attack the apportionment of his state's highest court,[2] his request for declaratory and injunctive relief should be viewed as separate and independent of his request for a stay of his state

---

2. It should be observed that appellant is undeniably a citizen of Kentucky. *See*

Shaffer v. Tepper, 127 F.Supp. 892, 894–895 (E.D.Ky.1955).

court appeal. Therefore, viewing appellant's complaint as requesting two distinct forms of relief, only the first of which is barred by *Younger*, and agreeing with the majority that appellant has raised substantial constitutional questions with regard to his alternate prayer for relief, I would remand for the convening of a three-judge court to hear the malapportionment contention. This is the usual procedure when an action is brought in federal court attacking the validity of a state districting statute. *See, e. g.*, Calkins v. Hare, *supra.*

Once the three-judge court is convened, presumably it could decide to abstain from acting. Such a decision would be based not upon Younger v. Harris, which involved the granting of an injunction against state court proceedings, but upon the federal abstention doctrine. That doctrine, first enunciated by the Supreme Court in Railroad Commission v. Pullman Company, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), concerns the dismissal by a federal court of a case properly before it in order to allow a state court the opportunity to pass on the issue involved. Harrison v. N. A. A. C. P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959).[3] The decision whether to abstain, however, cannot be made by a single judge, or by a court of appeals upon review of a decision on the merits by a single judge, when a three-judge court should have been convened. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); Stratton v. St. Louis S. W. Ry., 282 U.S. 10, 51 S.Ct. 8, 75 L.Ed. 135 (1930).

For the above reasons, then, I would remand to the District Court with directions to convene a three-judge court to proceed further with appellant's malapportionment claims.

3.  Although the issue is not properly before us, it might be noted that abstention in cases involving constitutional issues is very limited, see Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964), Griffin v. County School Board, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d

256 (1964), McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), and is not necessary where the relevant state constitutional and statutory provisions are plain and unambiguous, Davis v. Mann, *supra*, 377 U.S. at 690, 84 S.Ct. 1441.