Sylvia **KAIL**, Emanuel Kail, Edna Kramer, Louis Kramer, Edna Leopold, Joseph Leopold, Ruth Borger, Lawrence Borger, Ruth Reisman and Murray Reisman, individually, jointly, in behalf of themselves and others similarly situated, Plaintiffs,

v.

Nelson A. **ROCKEFELLER**, Governor of the State of New York, Louis J. Lefkowitz, Attorney General of the State of New York, Senator Elisha T. Barrett et al., Defendants.

No. 65 Civ. 205.

United States District Court
E. D. New York.

March 14, 1967.

Moses M. Falk, New York City (Robert A. Clark, New York City, of counsel), for plaintiffs.

George D. Zuckerman, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., of the State of New York, New York City, Samuel A. Hirshowitz, First Asst. Atty. Gen., Barry Mahoney, Deputy Asst. Atty. Gen., of counsel), for defendants.

Before MOORE, Circuit Judge, and BARTELS and RAYFIEL, District Judges.

MOORE, Circuit Judge.

Ten plaintiffs "individually, jointly, in behalf of themselves and others similarly situated" by amended complaint (the complaint) bring this action against the Governor of the State of New York, the Attorney-General and all members of both houses of the Legislature. They characterize themselves as "litigants with civil and/or criminal [they do not allege which] matters, issues and cases now pending in the Supreme Court, Queens County, who reside within the Eleventh Judicial District." The complaint alleges in substance that a delay in the Supreme Court of Queens County between the institution of lawsuits therein and the time of trial deprives them of Federal Constitutional rights, which deprivation can be cured by federal court mandate. They do not allege that they personally are in any way affected by any delay.

The Attorney General has moved to dismiss the complaint on the grounds that this Court lacks jurisdiction of the subject matter and that the complaint fails to state a claim. F.R.Civ.P. 12(b).

The American Trial Lawyers Association, the Queens County Bar Association (as friends of the court) and the New York State Association of Trial Lawyers (by means of their memorandum submitted in the case in the Southern District of New York entitled "New York State Association of Trial Lawyers, and others v. Nelson A. Rockefeller, and Others"), have given to the Court the advantage of their views in opposition to the motion to dismiss for want of jurisdiction and failure to state a claim.

*Jurisdiction*

Plaintiffs base their lawsuit aspects as to jurisdiction upon.

Sixth Amendment (U. S. Constitution).

Seventh Amendment (U. S. Constitution).

Fourteenth Amendment (U. S. Constitution).

28 U.S.C. § 1343(3).

28 U.S.C. §§ 2201, 2202.

28 U.S.C. § 2281 et seq.

42 U.S.C. §§ 1981, 1983.

Controversy over $10,000 (no demand for a money judgment is anywhere asserted and no diversity alleged—unnecessary, however, if other grounds are sound).

*The Relief Sought*

Plaintiffs ask a three-judge federal court to issue a decree:

1. adjudging Section 140–a (Judiciary Law, New York, Consol.Laws, c. 630, eff. Jan. 1, 1963) unconstitutional and violative of the Sixth, Seventh and Fourteenth Amendments of the Constitution of the United States;

2. enjoining enforcement until the Legislature grants the relief plaintiffs request;

3. that the members of the Legislature "direct the election of additional Supreme Court Justices, not less than eight thereof" for Queens County;

4. that the Governor and Attorney-General cooperate fully "in finalizing and enforcing the same";

5. that the Legislature provide the legal authority for those additional Supreme Court Justices;

6. that all persons in the State of New York be enjoined [obviously regardless of their supposed freedom to vote] from violating the hoped-for mandate to be issued by this three-judge court; and

7. to "grant such other and further relief as to this Court may seem just and proper".

The motion to dismiss for want of jurisdiction of subject matter and for failure to state a claim upon which relief may be granted will be considered by this Court as a matter of law, accepting, of course, the allegations of the complaint as true.

*The Gravamen of the Complaint*

The complaint alleges facts and arguments with which the Legislature, the State Judicial Conference, Commissions and committees of Bench and Bar have been considering for years, namely, calendar delays in the courts, particularly in Queens County, which delay they ascribe to an inadequate number of Supreme Court judges in that county. Bibliographies of the vast number of articles and committee reports written during the last twelve years on court reform and congestion in the courts are readily available and need not be made a part of this opinion.

Stated briefly, the burden of the complaint is that, in creating an Eleventh Judicial District (State Constitution, Art. 6, § 6, eff. Sept. 1, 1962), there was a mal-apportionment of Supreme Court Justices under section 140–a of the Judiciary Law in that there was "discriminatory allocation" of Supreme Court Justices to the newly created Eleventh (Queens County) District which was caused by "the deliberate, willful design of those voting for the same in the State Legislature for the purpose of the then political expediencies and without concern or regard for the Judicial and Constitutional well being of the persons residing in Queens, i. e., the Eleventh Judicial District."

Certain figures are alleged as to the backlog of cases on the Supreme Court calendar on September 1, 1962 which, with cases added in 1963 and 1964, is said to create more congestion and delay in Queens County than in any other Judicial District in the State. This situa-

tion, plaintiffs charge, inflicts "irreparable injury to their Constitutional rights to equal protection of the laws, and to their rights to judicial redress for legal wrongs by reason of the acts [herein] complained of." Claiming no adequate remedy at law, they bring "this suit for mandamus directive order and declaratory judgment."

In opposing the motion to dismiss the complaint, plaintiffs rely primarily on the legislative reapportionment cases decided by the Supreme Court on June 15, 1964, which gave rise to the "one-man-one vote" doctrine. See Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) etc. These cases in turn were preceded by Baker v. Carr, 369 U.S. 186, 82 S.C. 691, 7 L.Ed.2d 663 (1962) and Wesberry v. Sanders, 376 U.S. 1, 84 S.C. 526, 11 L.Ed.2d 481 (1964) which stressed the importance of equality of numbers in apportioning legislative districts. Plaintiffs argue that the judicial districts have "arbitrarily varying numbers of judges [who] are elected by unequal numbers of the population." (Brief, p. 20).

 Undue delay in bringing cases to trial is, of course, a matter of deep concern to Bench and Bar alike. The expression so frequently used and more frequently misunderstood "justice delayed is justice denied" fails to take into consideration the heavy concentration of tort cases in the areas of greatest delays, the time (months and years) apparently required to seek insurance company adjustment, the ultimate institution of suit, the countless mutual adjournments for pleadings and other pre-trial procedures, all a part of the strategy adopted by both sides to obtain the best possible settlement, ending only with the frequently traumatic (to counsel) experience of being actually called for trial. These real life situations are not mentioned to indicate any lack of need for greater judicial manpower but only as a preamble to the only issue now before us, namely; can or should a federal court be so presumptuous not only to advise but to direct the legislators of the State of New York and its Executive Officers how to manage the State's judicial affairs.

The fundamental fallacy of plaintiffs' position is to be found in the "one-man-one vote" slogan which is currently spreading throughout the country without regard to its original and well-intended purpose. Accompanying it is that equally used and misused expression "the equal protection of the laws." The quickest refutation of plaintiffs' contention comes from their own argument, couched as "an allegation" (Am. Compl. psr. 11, p. 13):

"It is the contention of the plaintiffs herein that any official act on the part of the public officers who have coodinated [sic] and acted together, for the purpose of giving one group of their constituents as opposed to another group of their constituents, a politically inspired, unwarranted, advantage—judicial or otherwise—is unconstitutional."

Often the most convincing rebuttal is found, not in subtle theory but in a reductio ad absurdum and common sense approach. Many enactments of legislative bodies, of necessity, give an advantage to the majority and impose correlative duties and burdens on the minority whether the subject be taxation, property condemnation or one within any field of legislative power.

Within the year, other attempts have been made to have federal courts invade State territory and usurp State powers. In Buchanan v. Rhodes, 249 F.Supp. 860 (N.D.Ohio, E.D.1966), appeal dismissed, 385 U.S. 3, 87 S.Ct. 33, 17 L. Ed.2d 3 (1966), the plaintiffs there sought to attack the Ohio Constitution which provided for one Common Pleas judge for each county. The county population disparity was substantial. The problem was quite similar to that presented here and the self-answering ques-

tions cannot be better stated than by Chief Judge Connell who said:

"We are surprised that the plaintiffs would have us reapportion only the judges in the trial courts of the state. Should we not also reapportion the number of sheriffs and their deputies so that litigants in heavily populated counties will have an opportunity to secure quicker service of process? Should we not also reapportion the number of clerks of court and their deputies so that litigants in heavily populated counties will have more expeditious processing of the paper work involved in litigation? Since the prejudicial delay is also caused by a paucity of trial lawyers, shall we, considering lawyers as officers of the court (to satisfy the 'state action' requirement for invoking the Fourteenth Amendment), reapportion their number among the eighty-eight counties of Ohio? And if this Court can affect the destinies of men by amending an entire judicial structure, what of mere brick and mortar? Should we not also reapportion the number of courthouses and courtrooms in the various counties? These questions supply their own answers." (249 F. Supp. p. 862).

The radical difference between the legislative reapportionment decisions and the administrative calendar problem facing the courts is well demonstrated in the opinion of Judge Tenney in the New York State Trial Lawyers et al. v. Nelson A. Rockefeller et al., S.D.N.Y. Jan. 31, 1967, 267 F.Supp. 148, case which he succinctly summarizes in stating:

"The state judiciary, unlike the legislature, is not the organ responsible for achieving representative government. Nor can the direction that state legislative districts be substantially equal in population be converted into a requirement that a state distribute its judges on a per capita basis."

The wisdom of Mr. Justice Frankfurter, in suggesting that "due regard for the effective working of our Government revealed this issue to be of peculiarly political nature and therefore not meet for judicial determination." is still sound, Colegrove v. Green, 328 U.S. 549, 552, 66 S.Ct. 1198, 1199, 90 L.Ed. 1432 (1946), and he added (pp. 553–554, 66 S.Ct. p. 1200):

"It is hostile to a democratic system to involve the judiciary in the politics of the people. And it is not less pernicious if such judicial intervention in an essentially political contest be dressed up in the abstract phrases of the law."

Over the last few years, the question of court reform in the State of New York and the many difficult problems attendant thereto have been most carefully considered by the Legislature, Judges, Bar Associations, Special Committees and members of the Bar. Countless debates pro and con have occurred. No perfect solution was found, but legislation acceptable to the majority was adopted. The courts themselves profess (or at least should) to no greater infallibility. Witness the many 2–1, 4–3, 5–4 decisions on important questions.

Prior to the legislation, effective Jan. 1, 1963, there had been ten judicial districts. Judiciary Law § 140–a. The tenth district consisted of the counties of Queens, Nassau and Suffolk (§ 140). Thirteen judges were given to this district (§ 140–a). Obviously, because of the change in population of these counties, the Legislature created a new district, Queens, to have eleven judges and, in addition, a number equal to the number of judges of the county court of Queens County—a total of 15. The former Tenth, which had had 13 Judges, was increased to 14.

In an endeavor to align themselves with legislative reapportionment cases, plaintiffs would have the federal judiciary take over the management of New York's judicial system and adopt the simple

formula of dividing an assumed 1960 State population of 15,612,000 by 184 Supreme Court Justices. They would then divide this State population by the 184 [the figures stated in the complaint would appear to total 194 but any such difference is inconsequential and non-determinative] Supreme Court Justices authorized under the 1962 law and obtain a population figure of 84,854 per judge. This hypothetical average they then divide into the assumed population of Queens County and reach the mathematical conclusion that on this basis Queens County should have 23 instead of 15 judges. Their argument (couched as complaint allegations) continues that as a result of this thus-calculated deficiency of judicial manpower, the citizens of Queens are having (a) their "privileges and immunities" abridged; (b) that they are being deprived of life, liberty and property without due process of law; (c) that they are denied "the equal protection of the laws"; (d) that the Sixth Amendment (U.S.) is violated in that accused do not enjoy the right to a speedy [and what defendant does?] and public trial; and (e) that the Seventh Amendment (U.S.) is violated (right to trial by jury)—but again no explanation as to how.

Plaintiffs are not without remedy. They have State courts available to them in which to seek redress. Even though they assert that they have to wait too long for this privilege, this too is a ground which they can allege. They have appellate courts. They have a State Constitution affording rights very similar to the United States Constitution. And they can always seek relief from the United States Supreme Court.

Plaintiffs claim that they are denied the equal protection of the law under the Fourteenth Amendment by reason of the lack of judges arising from an unequal population apportionment which in turn causes a delay in the trial of their cases far greater than and unequal to the delay in other judicial districts. A uniform timetable for the trial of all cases within the State is not required by the Fourteenth Amendment. In applying the guarantee of equal protection of the law, the Constitution does not demand that the law operate in the same manner upon all persons within the State (McGowan v. State of Maryland, 1961, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed. 2d 393) nor does it mandate territorial uniformity (Griffin v. County School Board of Prince Edward County, 1964, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256). State legislatures have a wide discretion in indulging in classifications which have a reasonable relation to the goal to be achieved and it is immaterial if in practice the classification results in some inequality (McGowan v. State of Maryland, supra). If it has a reasonable basis, legislative classification will not violate due process merely because it is not made with mathematical nicety (Lindsley v. Natural Carbonic Gas Co., 1911, 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369) and moreover it will not justify judicial interference (Allied Stores of Ohio, Inc. v. Bowers, 1959, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480).

And, lastly, on the eve of an important State Constitutional Convention, it would scarcely serve a useful purpose to make any judicial pronouncement as to judicial districts. If eight additional Supreme Court Justices for Queens County will cure all the ills here complained of, may they be obtained. But, more important, may they be obtained by the methods authorized by the State Constitution adopted as provided by law and in accordance with the will of the people through their duly elected representatives and not by a dictatorship of the courts, State or Federal—in effect, sitting as a "super-legislature to weigh the wisdom of legislation," Day-Brite Lighting, Inc. v. State of Missouri, 342 U.S. 421, 423, 72 S.Ct. 405, 407, 96 L.Ed. 469 (1952); Ferguson v. Skrupa, 372 U.S. 726, 731, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).

Amended complaint dismissed.