**German ORTIZ et al., Plaintiffs, Appellants,**

v.

**Honorable Rafael Hernandez COLON, Governor of the Commonwealth of Puerto Rico, et al., Defendants, Appellees.**

**No. 73–1017.**

United States Court of Appeals, First Circuit.

Heard Feb. 5, 1973.

Decided March 28, 1973.

Harvey B. Nachman, San Juan, P. R., with whom Dubon & Dubon, San Juan, P. R., and Nachman, Feldstein & Gelpi, San Juan, P. R., were on brief, for appellants.

Peter Ortiz, Asst. Sol. Gen., with whom Francisco De Jesus Schuck, Secretary of Justice, and J. F. Rodriguez Rivera, Acting Sol. Gen., were on brief, for appellee, Honorable Rafael Hernandez Colon, Governor of The Commonwealth of Puerto Rico.

Luis Munoz Rivera, pro se.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Appellants, on January 3, 1973, filed a complaint which sought to enjoin the Governor of Puerto Rico from complying with his statutory duty of appointing five members of the Municipal Assembly of San Juan, on the grounds that L.P.R.A., tit. 21, § 1152(b), which authorizes such action, results in an unconstitutional deprivation of equal protection in that the residents of San Juan, who elect twelve other members of the Municipal Assembly, suffer an illegal dilution of their votes in violation of the principle of "one person-one vote". A request for a three-judge court was denied since, although a substantial constitutional question was presented, the district court found that the Commonwealth statute at issue "affects only the electorate of San Juan and not the rest of the Commonwealth." Appellants' claims were subsequently rejected by the court. We have decided that a three-judge court is required to hear appellants' contentions, and consequently remand for a trial before such a court without expressing any opinion on the

merits of the case. Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (U.S. Jan. 17, 1973).

The statute governing us, 28 U.S.C. § 2281, requires the convening of a three-judge court when what is sought is an "injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute . . . ." This has been said not to apply to a state statute which relates to a matter not "of statewide concern but [which] affects exclusively a particular district [in the state]." Rorick v. Board of Commissioners, 307 U.S. 208, 212, 59 S.Ct. 808, 811, 83 L.Ed. 1242 (1939). Later, the Court referred to convening a § 2281 court to hear challenges to "state law the application of which is state-wide", Cleveland v. United States, 323 U.S. 329, 65 S.Ct. 280, 89 L.Ed. 274 (1945), thereby seemingly focusing more on the application or impact of the state statute, rather than on the breadth of the concerns which it manifested. This view was reinforced in Moody v. Flowers, 387 U.S. 97, 101–102, 87 S.Ct. 1544, 1548, 18 L.Ed.2d 643 (1967), which indicated that a three-judge court was proper "only when a state statute of general and statewide application is sought to be enjoined . . . [and not when] state officers [perform] matters of purely local concern." Where the " 'statute' . . . is one of limited application, concerning only a particular county", id. at 104, 87 S.Ct. at 1549, a single judge should hear the cause. Most recently, certain language in Board of Regents v. New Left Education Project, 404 U.S. 541, 543, 92 S.Ct. 652, 654, 30 L.Ed.2d 697, if taken out of context, might be said to confirm the propriety of determining whether a "state statute [has] only a local impact"—as opposed to a statewide impact—as the touchstone for deciding the applicability of § 2281.

The district court apparently relied solely upon the "application" or "impact" test and decided that appellants had not demonstrated any statewide ap-plication of § 1152(b). But we do not think that "local impact", measured in terms of geography, is alone the decisive factor. As the reference in Moody v. Flowers, supra, 387 U.S. at 102, 87 S.Ct. 1544, to "purely local concern" suggests, single judge jurisdiction is premised not only upon local impact but upon the absence from the challenged state statute of a significant expression of statewide policy. "The crux of the [three-judge court] business is procedural protection against an improvident state-wide doom by a federal court of a state's legislative policy." Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1940).

In Alabama State Teachers Ass'n v. Alabama Public School & College Authority, 393 U.S. 400, 89 S.Ct. 681, 21 L.Ed.2d 631 (1969), the Court summarily affirmed a three-judge court decision that a state statute directing the issuance of bonds for construction of one state university in one city did not contribute to racial segregation. In New Left, the Court left no doubt that Alabama State Teachers Ass'n had been properly before it, stating that "that action, although having a local impact, [was alleged to be] expressive of an official, statewide policy to maintain a racially identifiable, dual system of education. . . . [Thus] a statewide policy was sufficiently implicated to sustain the jurisdiction of the three-judge court . . . ." New Left, supra, 404 U.S. at 544 n. 2, 92 S.Ct. at 654.

There can be no doubt here that an analogous "official, statewide policy" to give all Puerto Ricans a voice in the affairs of San Juan is implicated in § 1152 (b). Reference to predecessors of the challenged statute reveals that Act No. 99, § 55 (1931), first established an appointed Board of Commissioners for the capital of Puerto Rico with a changeover to a fully elected board to occur in 1937. However, Act No. 10 (1936) amended the 1931 law to provide for a nine-member Board with five popularly elected members and four appointed by the Governor. In 1960 the present law was en-

acted whereby the Governor appoints five of seventeen members.*

The rationale underlying the current law was thus expressed by the Majority Leader of the Senate:

"Now the decision has been that there be, in the municipality of San Juan, where the country's general interests are represented, an indirect intervention by the collective will of the people, in some specific form, by determining the style in which its government shall be constituted.

\* \* \*

"If we think, Mr. Chairman, that the general fund of the country has to invest here copious amounts of money for the port development, that belongs to all of Puerto Rico, for the University facilities which belong to all of Puerto Rico, for the large traffic arteries needed for the economic progress of this country, for banking, for industry, for the moving control of this country throughout the developing process and growth thereof, and its life itself, there are sufficient reasons to have a voice from all the Puerto Rican citizenry, even though tinily represented, to be heard in regard to the manner in which the San Juan municipality is governed." Diario de Sesiones, Vol. XIII, Tomo 4, p. 1715.

The long history of the various types of government under which San Juan has been administered is indicative of the concerns of the Puerto Rican legislature that affairs of the capital be conducted to reflect the will of all Puerto Ricans because of the role played by that city in all aspects of life in the Commonwealth. Such concerns constitute a policy which cannot be said to be of *only* local import, whatever may be the statute's application or impact.

The judgment of the district court is therefore vacated, and the case remanded for reference to a three-judge court.

*Most recently, in 1971, House Bill 510, which provided for the popular election of all seventeen assembly members, passed the Puerto Rican House and Senate, but was vetoed by the Governor.