**Donald R. MANES et al., Plaintiffs,**

v.

**Harrison J. GOLDIN, Comptroller of the City of New York, et al., Defendants,**

and

**Louis J. Lefkowitz, Attorney General of the State of New York, Intervenor-Defendant.**

**No. 74 C 191.**

United States District Court,
E. D. New York.

June 30, 1975.

Moses M. Falk, New York City, for plaintiffs other than John G. Hall and Brooklyn Bar Association.

Reuben E. Gross, Staten Island, N. Y., for plaintiff John G. Hall.

Weinstein, Chayt & Bard, P. C., Brooklyn, N. Y., for plaintiff Brooklyn Bar Association.

W. Bernard Richland, Corp. Counsel, New York City, for defendant Harrison J. Goldin; A. Michael Weber, Asst. Corp. Counsel, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for defendants County Clerks (except Brandow) and appearing pro se as intervenor-defendant; Samuel A. Hirshowitz, First Asst. Atty. Gen., Shirley Adelson Siegel, Asst. Atty. Gen., of counsel.

Bagley, Chadderdon, Pulver & Stiefel, Catskill, N. Y., for defendant Neal Brandow.

Walter C. Reid, New York City, for Bay Ridge Lawyers Association, amicus curiae.

Before GURFEIN, Circuit Judge, and JUDD and NEAHER, District Judges.

## OPINION AND ORDER

JUDD, District Judge.

This action for an injunction against the enforcement of 1972 New York statutes which raised court filing fees and charges in New York City was heard on the merits by a three-judge court. Motions to dismiss or for judgment on the pleadings were argued and considered at the same time, as was also a request for a class action determination.

### Facts

The most serious attack in the complaint is on filing fees for the New York State Supreme Court in the five counties of New York City. These fees amount to $110 for a jury case in the Supreme Court, consisting of a $25 fee to obtain an index number when the first paper is filed, a $50 calendar fee when the notice of trial is filed, and a $35 jury fee if a demand is made for a six-man jury. There is no jury fee at all in some counties. Fees for similar proceedings in other counties range from $4 in rural upstate counties to $42.50 in Nassau County.

Though the complaint primarily challenges fees necessary to obtain a jury trial of a civil action in the Supreme Court, it also contests disparity in fees for such things as filing a certificate as a notary public, filing a notice of pendency of action, or a notice of attachment against real estate, for certification, exemplification and copying of papers, searching court records, production of records pursuant to a subpoena *duces tecum,* or issuing certificates of various kinds, and for other services performed by the clerks of court.

Facts concerning the impact of the fees, the use of the funds, and the differences between New York City and other parts of the state were developed by extensive interrogatories and depositions. Plaintiffs showed that there were substantially more blacks and other minority group members in New York City than in counties outside New York City, and that there were substantially more poor people in New York City than in the counties outside New York City. However, there was no particularized evidence of the impact of the fees on these persons.

There was no substantial contested issue of fact at the hearing before the three-judge court.

The individual plaintiffs here are primarily concerned as plaintiffs in tort negligence actions pending in the Supreme Court, Queens County. None has been prevented from prosecuting his or her action by reason of the filing fees of which they complain. In some cases, however, counsel advanced the filing fees because their clients said they were unable to afford the funds.

Plaintiffs assert that the procedures for obtaining leave to prosecute actions *in forma pauperis* are so cumbersome for counsel that they sometimes deter representation, and thus fail to aid poor litigants. On the other hand, affidavits from attorneys in organizations which prosecute large numbers of matrimonial

actions in the Supreme Court show that they have obtained leave to proceed *in forma pauperis* in 90 percent of the cases filed, and that they can obtain leave on mimeographed forms.

The bills which increased fees and gave rise to this litigation were passed on Messages of Necessity from the Governor, during the closing days of the 1972 Legislative Session. The messages dispensed with the requirement that bills lie on the desks of the legislators for three days before passage. Although there were no requests for the legislation by the City Council of New York City, the bills were requested by the Mayor. His legislative representative stated, for instance, in connection with the bill to increase fees and costs in the Supreme Court,

"While the fees would not cover the full cost of civil adjudication, it is only equitable to require those who use the courts to pay their fair share. The proposed fee schedules attempt to restore this principle by reflecting the combination of inflation and increased personnel costs that have made it more expensive for the city to provide these necessary services.

Accordingly, the Mayor urges upon the legislature the earliest possible favorable consideration of this proposal."

The President of the Richmond County Bar Association, plaintiff Hall, asserts that Richmond County is essentially a suburban community, that almost 90 percent of its residences consist of one and two family dwellings, and that it should be treated differently from the rest of New York City. He asserts that the demographic, social, and economic characteristics of Richmond County are not substantially different from those of other suburban counties in the state, and that its population density is within 3 percent of the figure of Nassau County. Fees of jurors in Richmond County are the same as in the rest of the City. Supreme Court Justices in Richmond County receive the same salary supplements

from the City as Justices from the other four counties.

The bills under attack originally changed court fees statewide, with different rates in New York City than in other counties, but the fees in "upstate" counties were immediately restored to their old levels. Review of the statute required a consideration of the statewide fee policy. Therefore, at the outset of the litigation Judge Weinstein, to whom the case was originally assigned, directed that the county clerks of three representative upstate counties be added as parties defendant. The New York Attorney General later requested Judge Weinstein to disqualify himself, and he did so. The representative counties which were chosen were Albany, an upstate urban county, Greene, a rural county, and Nassau, a suburban county adjoining New York City. Index number fees are $5.00 in Nassau, and $3.00 in Albany and Greene. Calendar fees are $5.00 in Albany, $1.00 in Greene, and $25.00 in Nassau. Jury demand fee is $12.50 in Nassau, with no fee charged in Albany or Greene.

The number of civil cases filed in the Supreme Court in New York City has apparently not been diminished by the increased fees; for the year 1970–71, before any fee increase, the intake was 86,026 cases, and for 1972–73, the year after the fee increases, it was 95,762 cases.

All the money received as filing fees is deposited in the City's general fund, from which all City expenses are paid, whether they be court costs, garbage collection, park maintenance, or any other items. The total fees collected from litigants represent only a small fraction of the City's costs of operating courts. Specifically, with respect to the Supreme Court in New York City, the City's expenditures in fiscal 1972 were $38,010,-339 and its revenues from fees were $1,063,121. A major part of the Supreme Court costs is allocable to criminal parts, but the plaintiffs were unable to show that the City made a profit on the opera-

tion of the civil parts of the Supreme Court in any county.

Jurors in New York City receive $12.00 per day, a higher figure than is paid in any other county. The jury fee of $35.00 in New York City is less than half the cost to the City of supplying a six-man jury for one day.

### Constitution and Statutes

Article VI, Section 1(a) of the New York Constitution provides:

"There shall be a unified court system for the state. The state-wide courts shall consist of the court of appeals, the supreme court including the appellate divisions thereof, the court of claims, the county court, the surrogate's court, and the family court, as hereinafter provided. The legislature shall established in and for the city of New York, as part of the unified court system for the state, a single, city-wide court of civil jurisdiction and a single, city-wide court of criminal jurisdiction . . . ."

With respect to county clerks, the Constitution, Article VI, Section 6(e), specifies:

"The clerks of the several counties shall be clerks of the supreme court with such powers and duties as shall be prescribed by law."

The challenged statutes are Sections 8018, 8020, and 8021, as amended, of the Civil Practice Law and Rules. Although due to some drafting errors during the 1972 legislative amendments one bill was captioned as intended to *"reduce* rates of various fees and costs in counties outside N Y City" and the other as intended to increase such fees in the city, in fact the result was to increase New York City fees virtually across the board, to leave most fees in other counties at their prior levels, and to reduce them in only a few instances.

### Discussion

Plaintiffs claim that the legislative scheme violates the equal protection clause of the Fourteenth Amendment by discriminating against litigants in New York City without any adequate relation to a valid state purpose. A second branch of their attack is based on the claim that the legislative pattern denies plaintiffs' class due process as protected by the Fifth and Fourteenth Amendments in that excessive filing fees foreclose access to the state courts for many plaintiffs and many types of claims.

Defendants assert (1) that there is no jurisdiction of the action in the federal court, (2) that the fee statutes are not statutes of statewide application which require the convening of a three-judge court, (3) that the court should abstain for reasons of comity, (4) that no "fundamental right" is violated and no "suspect classification" is employed and that there is a rational basis for the larger fees in New York City, and (5) that the 1972 fee schedules do not deny due process to the plaintiffs.

### Preliminary: New York Constitutional Law

Plaintiffs also made a preliminary attack on the statutes, based on the state constitution. This must be considered first. If there were a serious question of invalidity under the state constitution, it would affect the question of abstention, and federal jurisdiction might be lacking, unless it were treated as a pendent claim. Moreover, such a claim would not require a three-judge court.

Plaintiffs assert that the fee increase bills are invalid under the home rule provisions of the New York State Constitution. They refer to Article IX, § 2(b)(2) of the State Constitution, dealing with local home rule, which permits the legislature to act "in relation to the property, affairs or government of any local government" only by general law, or by special law on request of the local legislative body, or, except where New York City is involved, on the Governor's certificate of necessity.

Here, however, the Governor's messages of necessity in respect to the fee

increase bills were not submitted under Article IX, § 2, of the Constitution, but under Article III, § 14, which provides for the general manner of passing bills and specifies that the Governor may certify that facts "necessitate an immediate vote thereon."

The words "property, affairs or government" in the home rule provisions of the State Constitution have always been given a narrow interpretation. They would clearly not include the fixing of fees for the filing of papers in the statewide Supreme Court. From *Adler v. Deegan,* 251 N.Y. 467, 167 N.E. 705 (1929), to *Floyd v. New York State Urban Development Corp.,* 33 N.Y.2d 1, 347 N.Y.S.2d 161, 300 N.E.2d 704 (1973), it has been clear that any matter of state concern is not within the ambit of the home rule provisions.

1. *The Basis for Federal Court Jurisdiction*

Federal question jurisdiction does not exist under 28 U.S.C. § 1331 (a), because no single plaintiff will be required to pay fees of as much as $10,-000. Even if this were a class action, it is not possible to aggregate the claims of individuals. *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). No showing was made that any person was actually foreclosed from bringing suit on a claim for more than $10,000.

Jurisdiction exists, however, under 28 U.S.C. § 1343(3) relating to suits claiming a deprivation of equal rights of citizens under color of state law. This was the basis for jurisdiction in a recent case concerning court fees. *Boddie v. State of Connecticut,* 286 F.Supp. 968, 970 (D.Conn.1968), *aff'd,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

2. *Jurisdiction of the Three-Judge Court*

County clerks, by provision of the New York Constitution (Art. VI, sec. 6) and by statute (Judiciary Law, McKinney's Consol.Laws, c. 30, § 593) serve also as clerks of the Supreme Court in their respective counties. The "state officer" requirement of 28 U.S.C. § 2281 is satisfied if a local officer is performing a state function. *Moody v. Flowers,* 387 U.S. 97, 101–02, 87 S.Ct. 1544, 1548, 18 L.Ed.2d 643 (1967); *City of Cleveland v. United States,* 323 U.S. 329, 65 S.Ct. 280, 89 L.Ed. 274 (1945); *Spielman Motor Sales Co. v. Dodge,* 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935).

The requirement that the statute under attack be of statewide application is met on the face of the statute. The act in question, Chapter 734 of the Laws of 1972, sets forth Supreme Court filing fees and other charges for all the counties of the state. The changes which it made in counties outside New York City were nullified in most respects on the same day, by Chapter 735 of the Laws of 1972. Chapter 735 affected the rest of the state, rather than New York City. Even before the 1972 statutes, it was state policy to have territorial differences in various fees. There are three different fees for index numbers in different counties. CPLR § 8018. There are seven different fees for placing a cause on the trial calendar in different counties. CPLR § 8020(a). There are fees for a jury demand, at two different rates, in only ten of the 62 counties in the state. CPLR § 8020(c).

Without further analysis of the relation of the two 1972 statutes, it is sufficient to note that a statute which effectuates a statewide policy or plan should be reviewed by a three-judge court even though it affects just part of the state. *Ortiz v. Colon,* 475 F.2d 135 (1st Cir. 1973); *Hjelle v. Brooks,* 377 F. Supp. 430 (D.Alaska 1974); *Mortillaro v. State,* 356 F.Supp. 521 (E.D.La.1972); *Goldman v. Olsen,* 286 F.Supp. 35 (W.D. Wis. 1968).

Jurisdiction of a three-judge court is not denied by *Board of Regents v. New Left Education Project,* 404 U.S. 541, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972). That case did not involve a state statute, but simply rules and regulations of the Board of Regents of the

University of Texas System. The rules applied to only three of the state's 23 four-year state colleges and universities, and were, as the Supreme Court said, *"of limited significance."* 404 U.S. at 545, 92 S.Ct. at 655. In the present case, the jurisdiction of the three-judge court is proper. See *Board of Regents, supra,* 404 U.S. at 544, n. 2, 92 S.Ct. at 654, n. 2.

### 3. *Abstention*

Since the Supreme Court accepted jurisdiction of a challenge· to filing fees in *Boddie v. State of Connecticut, supra,* there is no need for lengthy consideration of the defendants' assertion that the federal court should abstain pending proceedings in the state court.

■ This case is not one in which a federal court should await a state court construction of an ambiguous state law, as in *Lake Carriers' Assn. v. Mac-Mullan,* 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972), for the fee schedules are quite clear. And this is not a case like *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), cited by defendants. There the court approved the dismissal of a suit to review an order of the Texas Railroad Commission granting a permit to drill oil wells, because the proper use and conservation of oil and gas presented "as thorny a problem as has challenged the ingenuity and wisdom of legislatures." 319 U.S. at 318, 63 S.Ct. at 1099, *quoting Railroad Comm. v. Rowan & Nichols Oil Co.,* 310 U.S. 573, 579, 60 S.Ct. 1021, 1023, 84 L.Ed. 1368 (1940). It is perfectly appropriate for the federal court to consider whether a particular court fee system denies federal constitutional rights.

### 4. *Rational Basis for State Action*

■ The standard of review for equal protection claims depends on "the character of classification in question; the individual interests affected by the classification; and the governmental interest asserted in support of the classification." *Dunn v. Blumstein,* 405

U.S. 330, 335, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (1972).

■ Differences in ease of access to the courts have not been held to implicate such fundamental rights that the state must show· a "compelling state interest" to support any differentiation. When the state imposes varying burdens, however, "the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation." *F. R. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561–62, 64 L.Ed. 989 (1920).

The justification urged by the defendants and shown by the legislative history is that the fees under attack will help New York City meet its share of the cost of running the courts. Although New York City was once the center of wealth for the state, it is now indisputable that its budget is overburdened and it is less able to meet its needs than the rest of the ·state.

### *Territorial Distinctions*

■ A territorial distinction which has no rational basis will not support a state statute. See *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); *Gordon v. Lance,* 403 U.S. 1, 4, 91 S.Ct. 1889, 1891, 29 L.Ed.2d 273 (1970).

■ The existence of a territorial distinction does not, however, necessarily invalidate a statute. As was stated in *Salsburg v. State of Maryland,* 346 U.S. 545, 551, 74 S.Ct. 280, 283, 98 L.Ed. 281:

> "The Equal Protection Clause relates to equality between persons as such rather than between areas."

The statute involved in *Salsburg* established different rules of evidence in certain prosecutions in Anne Arundel County than in the rest of Maryland. In an older case, involving a Missouri statute which established intermediate· appeals courts in the City of St. Louis and four counties and abolished the

right of direct appeal to the Supreme Court of Missouri, the United States Supreme Court said that the equal protection clause of the Fourteenth Amendment means

"[T]hat no person or class of persons shall be denied the same protection of the laws which is enjoyed by other prsons or other classes *in the same place* and under like circumstances." (Emphasis added).

*State of Missouri v. Lewis,* 101 U.S. 22, 31, 25 L.Ed. 989. The imposition of a $50.00 jury demand fee in Cook County and not in other portions of Illinois was sustained in *Fried v. Danaher,* 46 Ill.2d 475, 263 N.E.2d 820 (1970), *appeal dismissed "for want of a substantial federal question,"* 402 U.S. 902, 91 S.Ct. 1382, 28 L.Ed.2d 643 (1971).

In dealing with an attack on alleged inequality in the number of judges assigned to courts in different areas, an earlier three-judge court in this district in *Kail v. Rockefeller,* 275 F.Supp. 937, 942 (1967) stated that

"In applying the guarantee of equal protection of the law, the Constitution does not demand that the law operate in the same manner upon all persons within the State (citation omitted), nor does it mandate territorial uniformity . . . ."

Territorial differences in school funding, resulting from a combination of state law and local action, were held not to violate constitutional rights of equal protection in *San Antonio School District v. Rodriquez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

All persons suing in the courts in New York City pay the same fees whether they are citizens of New York City or of some other state.

■ Considering the character of the classification, the nature of the individual interest, and the governmental interest as required by *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, *supra,* it seems clear to this court that there is a sufficient basis for the statute under attack to comply with the requirements of the equal protection clause.

### 5. *Due Process*

Plaintiff Hall bases his attack on the statutes in part on a provision of Magna Carta: *"Nulli vendemus, nulli negabimus aut differemus rectum aut justitiam."* (To no one will we sell, to no one will we deny or delay right or justice).

The prohibition against selling justice has doubtless become part of the English and American common law, but it is not fairly applicable to this case. If Magna Carta required free access to the courts, it would invalidate all filing fees. As a requirement imposed on King John by the Barons, it was a prohibition against venality, not an eternal rule against a user-supported court system.

■ We do not deal here with court fees which are "patently exclusionary" because of their "very size", as was the case with the primary election filing fees involved in *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), on whch plaintiffs rely. Nor do we pass on the constitutionality of a fee system which forecloses access to a particular class of litigants or claims. Moderate filing fees have been sustained against due process attack in *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), ($50.00 bankruptcy filing fee); *Ortwein v. Schwab,* 410 U.S. 656, 93 S. Ct. 1172, 35 L.Ed.2d 572 (1973) (appellate filing fee); *Boyden v. Commissioner of Patents,* 142 U.S.App.D.C. 351, 441 F.2d 1041 (1971) ($95.00 patent filing fee), and *Lane v. Correll,* 434 F.2d 598 (5th Cir. 1970) ($15.00 arrest warrant fee).

■ One of the legitimate purposes of filing fees is "to make the system self-sustaining and paid for by those who use it rather than by tax revenues drawn from the public at large." See *United States v. Kras, supra,* 409 U.S.

at 448, 93 S.Ct. 639. The fact that the fees in question go into the City's general fund instead of being earmarked for support of the courts is of no significance, since the courts' support comes from the same general fund.

The right to impose charges in litigated matters is also supported by *Schilb v. Kuebel*, 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971), where the Supreme Court sustained an Illinois statute permitting a bail-bond charge of one percent of a defendant's total bail, even though he was later acquitted.

■ The New York law permits poor people to proceed *in forma pauperis*, CPLR § 1101, without paying the fees until recovery by judgment § 1102 (a). The papers required are not an undue burden on attorneys. Where there is a contingent fee retainer in negligence cases, however, the beneficial interest in the recovery by the attorney will probably bar a waiver of fees. *Cf. Lawrence v. Murray*, 171 Misc. 666, 12 N.Y.S.2d 262 (1939). See *Legislative Studies and Reports* in 7B McKinney's CPLR § 1101, p. 474. But see 2 Weinstein, Korn and Miller, *New York Civil Practice* (1974) § 1101.09. Accordingly, negligence attorneys have a special interest in keeping the filing fees low, for it is they who, as a practical matter, advance the fees.

### Richmond County

Plaintiff Hall asserts that the suburban character of Richmond County makes it unfair to treat it like the other counties in New York City. There would have been difficulties involved in a state law setting different fees for different parts of New York City. Even assuming that the legislature might feasibly have made such a distinction, there is no necessity for it to do so.

■ Richmond County has both advantages and disadvantages from being part of New York City, but there is no constitutional requirement to treat it differently from the rest of the city.

### Other Fees

■ No different considerations apply to the various other fees set by the statute under attack. Plaintiffs complain especially of the $10.00 filing fee for notaries public in New York City, which is ten times as high as the fee elsewhere in the state. The evidence does not show, however, that the fee exceeds the reasonable cost of personnel and other expenses involved in handling notary public matters. The territorial differential does not violate any federal constitutional rights.

### Class Action

■ Plaintiffs have not shown any reason why a class action is "superior to other available methods for the fair and efficient adjudication of the controversy" F.R.Civ.P. 23(b)(3). The decision in this action will have effect as *stare decisis*. The participation by sixteen bar associations as *amici* suggests that all available arguments for plaintiffs have been presented. Nothing would be gained by giving widespread notice to potential class members.

■ Notice to potential class members is not required, absent special circumstances, when an action brought on behalf of a class is dismissed on the merits. *Dolgow v. Anderson*, 53 F.R.D. 664, 690 (E.D.N.Y.), *aff'd*, 464 F.2d 437 (2d Cir. 1971); *Baham v. Southern Bell Tel & Tel Co.*, 55 F.R.D. 478 (W.D.La.1972); *Daugherty v. Ball*, 43 F.R.D. 329 (N.D. Cal.1967).

### Conclusion

The court therefore (1) denies the motions for dismissal for failure to state a cause of action and for judgment on the pleadings, (2) concludes on the merits that the statutes attacked in the complaint are valid and constitutional, (3) denies the motion to designate the case as a class action, and (4) directs that the Clerk of Court enter judgment dismissing the complaint.